BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6831
    Laura.Vartain@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO 14-00337 CRB |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| BOBBY NAPIER, | Hearing Date:  June 20, 2017 |
| Defendant. | Court:          The Honorable Charles R. Breyer |
| | Time:          10:00 am |

## I.      INTRODUCTION

The drug trafficking and public corruption scheme before the Court is straightforward: Defendant Bobby Napier bribed a Transportation and Security Administration (TSA) official in order to smuggle drugs through San Francisco International Airport (SFO).   Napier engaged in this scheme for several years.

As the facts and the applicable Sentencing Guidelines provisions underscore, this case is both a drug trafficking and public corruption case, and it is one with troubling impact.  Defendant Napier's conduct, together those of his co-conspirator TSA agents and co-conspirator drug couriers and traffickers, threatened the safety and security of air travel.  In each instance in which TSA agents allowed passengers carrying drugs to pass through security unchecked, they compromised the safety of all those persons within the secure section of the airport and the passengers on the aircraft.  Napier and his co-conspirators did this in order to traffic cocaine and marijuana for personal gain.

The PSR and the plea agreement describe the offense conduct, and the PSR is accurate as to the Guidelines calculation and criminal history.  Probation recommends a sentence of 60 months.  Applying 18 U.S.C. § 3553(a), the government recommends a sentence at the low-end of the applicable Guidelines range, which is 70-87 months.  Together with a sentence of 70 months, the government recommends three years of supervised release and a $100 special assessment.

## II.      OFFENSE CONDUCT

### A.      Procedural Facts

On June 24, 2014, a grand jury returned an indictment charging defendant, Bobby Napier with violating 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(ii), Conspiracy to possess with intent to distribute and to distribute more than five kilograms of cocaine.  The offense carried a mandatory minimum prison term of 10 years.  (PSR ¶ 1.)  Law enforcement arrested defendant on May 7, 2015, and the Court subsequently released him on bond.  (PSR ¶ 4.)

On January 10, 2017, the government filed a superseding information charging defendant with violating 18 U.S.C. § 201(b)(1), Bribery of a Public Official.  (Dkt. 48; PSR ¶ 1.)  The superseding information charges defendant with engaging in the charged scheme from an unknown date but no later than May 16, 2013, and continuing until April 17, 2014.  (Dkt.  48.)  Defendant pleaded guilty to the

1  superseding information pursuant to a plea agreement the following day.  (Dkt. 49, PSR ¶ 1.)

2      **B.**    **Defendant's Conduct**

3      The PSR and the plea agreement set out the relevant facts in this case.  As Napier admitted in his

4  plea agreement, on May 16, 2013, June 7, 2013, July 18, 2013, December 11, 2013, and April 17, 2013,

5  he agreed to smuggle cocaine through security at SFO by paying Joseph Scott,[1] a Supervisory

6  Transportation Security Officer for the TSA,[2] to ensure that the drugs passed through security

7  undetected.  (Dkt. 49 ¶ 2, PSR ¶ 6.)  On five instances, Napier agreed to smuggle cocaine, but Napier

8  agreed that he participated in the scheme for "several years" and also smuggled marijuana.  (Dkt. 49 ¶ 2,

9  PSR ¶ 7.)

10      Law enforcement learned of this conduct through a confidential source (CS), who informed the

11  government that Napier and another drug trafficker, Raphael Risher, worked together to transport large

12  amounts of marijuana through SFO.  (PSR ¶ 7; Dkt. 49.)  As part of the scheme, defendant bribed

13  Joseph Scott, a TSA employee, to facilitate carry-on baggage containing narcotics through passenger

14  security checkpoints without inspection.  PSR ¶ 7.   Joseph Scott was a Supervisory Transportation

15  Security Officer who had other TSA employees he worked with on the security checkpoints to ensure

16  that the drugs went through undetected.  *Id.*  Napier spoke with Scott to coordinate each smuggling

17  event, including to identify the courier to Joseph Scott and to ensure that the courier went to a particular

18  security line.  (Dkt. 49 ¶ 2.)  Napier paid Joseph Scott by cash deposit to Scott's bank account, by

19  money orders or cash mailed to Scott, and by cash paid to Scott in person.  (PSR ¶ 8.)

20      After learning about the conduct, law enforcement worked with the CS to set up the May 16,

21  2013 drug trafficking event.  Before May 16, 2013, the CS, posing as a drug courier, contacted Risher,

22  and the two planned to have the CS carry five kilograms of cocaine in his carry-on luggage.  Napier

23  charged Risher a higher price for smuggling cocaine, as opposed to marijuana.  (Dkt. 49 ¶ 2.)  Napier in

24  turn paid Joseph Scott $2,000 to ensure that the CS traveled undetected through the x-ray machines at

25

26      [1] Joseph Scott is charged together with his TSA co-conspirators, Jessica Scott and Michael Castaneda in United States v. Joseph Scott, Jessica Scott, and Michael Castaneda, Case No. 15-514, also pending before this Court.

27      [2] TSA contracts with Covenant Aviation Services (CAS) to provide aviation security services for

28  the passenger and baggage screening at SFO.  CAS employees like Joseph Scott are TSA officers.  (Dkt. 49 ¶ 2. PSR ¶ 7.)

1  security.  (PSR ¶ 8.)

2        On May 16, 2013, the CS arrived at SFO and Risher, who was in communication with Napier,

3  told the CS to stand at an ATM machine near the security checkpoint through which the CS needed to

4  pass.  (PSR ¶ 9.)  A TSA employee came and led the CS to the security checkpoint and security line,

5  through which the CS and cocaine passed through without detection.  On this instance, the CS carried

6  simulated cocaine.  *Id.*  In his plea agreement, Napier agreed that he told Joseph Scott that the courier

7  (the CS) was carrying cocaine, and that Napier paid Joseph Scott more money to facilitate cocaine, as

8  opposed to marijuana through security.  (Dkt. 49 ¶ 2.)

9        Following a similar scheme, Napier facilitated the safe passage of six kilograms of actual

10  cocaine through security on June 7, 2013.  The scheme changed slightly for the July 18, 2013, drug

11  trafficking event.  On this and subsequent events, an undercover agent (UC) posed as the drug courier.

12  Using code language, Napier told Risher that the courier/UC should wear red clothing so that the TSA

13  contacts would easily identify the courier.  In turn, Risher directed the UC to wear red clothing.  *Id.*; *see*

14  *also* Dkt. 49 ¶ 2.  On July 18, the UC successfully smuggled three kilograms of actual cocaine and three

15  kilograms of simulated cocaine.  Napier received $4,500, and he paid Joseph Scott.  *Id.*

16        The fourth drug trafficking event occurred on December 12, 2013.  (PSR ¶ 12.)  This time,

17  Risher met Napier at Napier's home in Texas prior to the event and the two coordinated the smuggling

18  operation.  *Id.*  Again, the UC traveled through security undetected, this time carrying six kilograms of

19  cocaine.  *Id.*  The final smuggling event occurred on April 17, 2014.  (PSR ¶ 13.)  This time, the UC

20  successfully smuggled two kilograms of actual cocaine.  *Id.*

21        Although these five events involved 25 kilograms of cocaine (real and simulated), Napier agreed

22  to facilitate a total of 23 kilograms of cocaine, which is the amount used to calculate the Guidelines.

23  (Dkt. 49 ¶ 2.)

24        **C.    Plea Agreement and the Guidelines Calculation**

25        The Guidelines provision for bribing a public official is USSG § 2C1.1(a)(2).  The parties agree

26  that certain specific offense characteristics increase the base offense level of 12.  Specifically, the

27  offense involved more than one bribe; Napier benefitted by $13,500; and the offense involved a public

28  official in a sensitive position.

UNITED STATES' SENTENCING MEMORANDUM
14-00337 CRB

USSG § 2C1.1 requires a cross-reference where the offense was committed for the purpose of facilitating another criminal offense.  *See* USSG §2C1.1(c)(1).  Applying the cross-reference, the base offense level is 32 because defendant is responsible for 23 kilograms of cocaine.  After application of safety valve and acceptance points, the applicable the adjusted total offense level is 27.

As set out in the Plea Agreement, the Guidelines calculation is as follows:

Bribery Offense

| | | |
|---|---|---|
| a. | Base Offense Level<br>U.S.S.G. § 2C1.1(a)(2) | 12 |
| b. | Specific Offense Characteristics: | |
| | Offense involved more than one bribe<br>U.S.S.G. § 2C1.1(b)(1) | 2 |
| | Value of benefit received: $13,500<br>(Value of benefit was between $10,000 and $30,000,<br>based on incorporation of U.S.S.G. § 2B1.1(b)(1)<br>pursuant to U.S.S.G. § 2C1.1(b)(2)) | 4 |
| | Offense involved public official in sensitive position<br>U.S.S.G. § 2C1.1(b)(3) | 4 |
| c. | Adjusted Offense Level (Bribery) | 22 |

Calculation of Cross-Reference

| | | |
|---|---|---|
| d. | Offense committed for the purpose of facilitating<br>the commission of another criminal offense – i.e.,<br>conspiracy to distribute cocaine<br>U.S.S.G. § 2C1.1(C)(1) | |
| e. | Base Offense Level<br>U.S.S.G. § 2D1.1(a)(5), (c)(4)<br>(23 kilograms of cocaine) | 32 |
| f. | Specific Offense Characteristics: | |
| | Safety valve<br>U.S.S.G. § 2D1.1(b)(17)<br>(If Probation finds that I meet the requirements of<br>U.S.S.G. §5C1.2(a)(1)-(4) and the Government finds<br>that I have truthfully debriefed with them within the<br>meaning of 5C1.2(a)(1)(5).) | -2 |

g.      Adjusted Offense Level (Narcotics)                30

Total Offense Level

h.      Acceptance of Responsibility:                          -3
        If I meet the requirements of U.S.S.G. § 3E1.1
        through sentencing, I may be entitled to a three-level
        reduction for acceptance of responsibility.

i.      Total Offense Level                                        27

Based on Total Offense Level 27 and Criminal History Category I, the Guidelines range is 70-87

months.  The Probation Office agrees that this is the applicable range.

## III.  UNITED STATES' SENTENCING RECOMMENDATION

### A.   The Nature and Circumstances of the Offense, the Seriousness of It, and the Need for Deterrence Warrant a Sentence Within the Guidelines.

The United States recommends a sentence of 70 months.  A significant sentence of imprisonment

is necessary to reflect the nature, circumstances, and seriousness of the offense, to promote respect for

the law, to provide just punishment, and particularly to afford adequate deterrence.  A low-end of the

Guidelines sentence takes into consideration certain of the factors that the Probation Office has

identified as mitigating factors.

Based on the nature and circumstances of this offense, as well as the seriousness of it, a sentence

within the Guidelines is appropriate.  This offense is equal parts public corruption and drug trafficking,

both aspects with substantial and serious risk of harm to the public.

As a public corruption crime, defendant's bribes to Joseph Scott, a supervisory TSA agent led to

dangerous conduct with terrifying impact on the safety and security of air travel.  In each instance in

which TSA officials allowed narcotics to pass through security without detection, defendant and his co-

conspirator TSA agents endangered the public.  For the scheme to work, the TSA officials working with

Joseph Scott who were responsible for the the x-ray checkpoints of passenger security declined to

perform their job function.  The Court will squarely confront the public corruption case when it

sentences the defendants in *United States v. Scott, Scott, Castaneda*, 15-514 CRB.  As the Court will see

in that case, the drugs that passed through security checkpoints due to Napier's bribes appeared to TSA

employees as explosives.  *See e.g.* 15-514 Dkt. 90, ¶ 2.  Yet the drugs passed through security because Napier ensured they would by bribing Joseph Scott to ensure no detection of the drugs.  But for defendants' bribes to Joseph Scott, TSA screeners working with Joseph Scott should have flagged the drugs as potential explosives and called for a secondary check of them to assess danger.  No check occurred, and the drugs passed through security.

As a drug trafficker, Napier moved a significant quantity of cocaine through SFO to other destinations.  In addition, he admitted that these were not the only instances in which he smuggled drugs through SFO; Napier admitted that the scheme lasted years, during which time he also moved marijuana through SFO.  Far from being isolated conduct, Napier had a successful drug trafficking scheme, in which he used both his drug connections and his TSA connections to move large quantities of narcotics by air.  The drug trafficking aspect of the crime also demands a sentence that reflects the serious nature and circumstances of the offense.  Accordingly, these factors warrant a sentence within the applicable Guidelines.

A sentence within the applicable Guidelines is also necessary for general deterrence.  This case is one of several pending before this Court in which drug traffickers paid bribes to TSA agents to move drugs moved through the airport undetected.[3]  This is not isolated conduct, and the need for deterrence is significant.

**B.      The Probation Office's Identified Bases for a Variance Do Not Warrant a Variance.**

The Probation Office recommends a variance to 60 months due to two factors: (1) defendant's compliance for nearly two years on pretrial release; and (2) the specific drug defendant smuggled.

Both of these appropriately factor into the 18 U.S.C. § 3553(a) analysis, but neither warrants a variance.  Instead, both take a set of facts that would warrant a mid or high-range sentencing Guidelines range to a low-end case.

The Probation Office's reliance on defendant's compliance while on pretrial release as a basis for a variance suggests that specific deterrence is not particularly necessary here.  But this is a case in which the primary deterrent value is general, and the Court should consider that value when sentencing

---

[3] *See, e.g.*, *United States v. Sunux, et al.*, Case No. 3:15-CR-167 CRB; *United States v. Beckham*, Case No. 3:16-CR-175 CRB.

defendant.

Probation also recommends a variance because cocaine carries a high range under the Guidelines.  Defendant agreed to traffic 23 kilograms of cocaine over the course of approximately a year.  As Probation acknowledges, defendant knowingly agreed to smuggle cocaine on each instance. There is no entrapment here, as indicated by the facts and defendant's agreement to the applicable Guidelines, which precludes any argument of entrapment.  In fact, defendant also agreed that he received more money to smuggle cocaine than marijuana, thereby receiving a benefit from the cocaine. A variance on the basis of the drug at issue is not appropriate on these facts.

To the extent that the Probation Office appears to believe that defendant's "primary offense" was bribing a public official and so recommends a variance on that basis, Probation ignores the reason for the cross-reference in the first instance.  The cross-reference addresses cases – like this one – where the bribe facilitates another crime.  Some bribes do not facilitate any separate illegal act.  In such a case, no cross-reference occurs because the bribery provision of the Guidelines captures the full scope of the criminal conduct.  Here, Napier's bribes facilitated repeated drug trafficking that threatened the safety and security of air travel and the cross-reference appropriately addresses his drug trafficking.  Napier directly coordinated the drug trafficking.  Knowing that the drug couriers carried cocaine rather than marijuana, Napier paid more money to Joseph Scott to ensure that the drugs passed through security undetected.  Napier coordinated the drug couriers' passage through security by directing them what to wear, and then informing Joseph Scott about the attire.  In short, but for Napier's conduct, the drug trafficking could not occur.

Therefore, the cross-reference addresses the full extent of Napier's conduct, and Napier's role sitting at the intersection of the public corruption and drug trafficking and facilitating both is not a basis for a variance.

In opposing a variance on this basis, the government acknowledges that Napier's role is relevant to the sentencing outcome.  The government considered Napier's role when extending the plea agreement in this case, and in recommending a sentence at the low-end of the applicable sentencing range.

//

1   **IV.     CONCLUSION**

2         The government respectfully recommends a sentence of 70 months, followed by three years of

3   supervised release, and the mandatory special assessment.

4   Dated: June 13, 2017                                      Respectfully submitted,

5                                                             BRIAN J. STRETCH
                                                              United States Attorney
6

7                                                             _____/s/_____

8                                                             LAURA VARTAIN HORN
                                                              Assistant United States Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES' SENTENCING MEMORANDUM
14-00337 CRB