DAVID J. COHEN, ESQ.
California Bar No. 145748
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Bobby Napier**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOBBY NAPIER, ) <br> ) <br> Defendant. ) <br> ) | Case No. 14-CR-337 CRB <br><br> **MR. NAPIER'S SENTENCING MEMORANDUM** <br><br> Date: June 20, 2017 <br> Time: 1:30 p.m. <br> Ctrm: 6 |

The defendant, BOBBY NAPIER, by and through his counsel of record, David J. Cohen, Esq., hereby submits his Sentencing Memorandum.

**I.**

**INTRODUCTION**

Mr. Napier agrees with the report of United States probation in all respects other than its refusal to recommend the RDAP program, and other than in the length of its recommended downward variance. Pursuant to the plea agreement, Mr. Napier agrees with the guideline calculations in the Probation report, and, also, pursuant to the plea agreement, Mr. Napier asks for a variance, pursuant to 18 U.S.C. Section 3553(a), to a non-guideline sentence of time already served, three years of supervised release, a waiver of fine due to Mr. Napier's financial circumstances, and a penalty assessment of $100.

Mr. Napier also requests that the Court recommend that, if he is sentence to a period of incarceration, he be permitted to self-surrender in 120 days from the date of his sentencing, that he be recommended for the RDAP program due to his addiction to marijuana, and that the Court recommend that Mr. Napier be housed in a federal prison camp as close as possible to his family in Houston, Texas.

Finally, Mr. Napier requests that the sentencing hearing in this case be continued so that he can obtain the plea agreements for similarly situated defendants in other "airport" cases, and that the government, pursuant to the discovery requirements of Fed. R. Crim. P. 16 and *Brady*. be ordered to produce all plea agreements for "airport" defendants to Mr. Napier's counsel.

## II.

### SENTENCING CONSIDERATIONS UNDER 18 USC § 3553(a)

The Section 3553(a) factors demonstrate that a non-custodial sentence is appropriate for Mr. Napier. The Court must determine "what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, [pursuant to] 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009). The "overarching" analysis under § 3553(a) is what sentence is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing, including a consideration of "the nature and circumstances of the offenses, and the history and characteristics of the defendant," and "the need for the sentence imposed" to, among other things, "reflect the serious of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . afford adequate deterrence to criminal conduct; . . . protect the public from further crimes of the defendant; [and] . . . provide the defendant with needed . . . medical care." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*); 18 U.S.C. § 3553(a). The court must also endeavor to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6). Application of the § 3553(a) factors requires "an individualized determination based on the facts" relevant to the particular defendant and offense. *Carty*, 520 F.3d at 991; *see also Gall v. United States*, 552 U.S. 38, 50 (2007) ("[The district court] must make an individualized assessment based on the facts presented.").

A. The Section 3553(a)(1) Weigh Against a Custodial Sentence, Given the Nature and Circumstances of the Offense and Mr. Napier's History and Characteristics

Consideration of the nature and circumstances of the offense, and of Mr. Napier's specific history and characteristics, both suggest that a sentence of time served and three years of supervised release would be appropriate in this case. The excellent summary in the report of United States probation and recommendation for a downward variance, as well as the attached sentencing letters clearly support a downward variance based upon this prong of the statute.

In sum, therefore, the Section 3553(a)(1) factors weigh heavily in favor of a non-custodial sentence.

B. The Section 3553(a)(2) Factors Do Not Support a Custodial Sentence for Mr. Napier

Section 3553(a)(2) mandates consideration of the punitive, deterrent, and rehabilitative purposes to be served by the sentence imposed. Mr. Napier respectfully submits that the purposes of criminal sentencing would not be served by removing him from his family and his community. He is not a danger to society, he has taken steps to rehabilitate himself, he is currently working and supporting his young child and family, and has performed without any issue, as pointed out by United States Probation, for the entirety of the two years of his supervised release.

**1. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

An unnecessarily harsh sentence, not taking into account the specific facts of the case or the defendant's rehabilitation, risks "work[ing] to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (citation omitted). A custodial sentence for a very ill man, who has not committed any further offenses since his arrest in this case in 2012 and who is a caretaker for his dying father, would be unjust under the circumstances.

The only sentence thus far imposed in connection with what we believe to be at least 12 defendants in these federal "airport" cases is 21 months which was imposed by Judge Tigar on Kiana Scott Clark in case No. CR-15-514. Imposing a custodial sentence on Mr. Napier for offenses that were created by the United States inasmuch as it was a United States informant who actually passed

the contraband (and in at least one case, fake contraband) through airport security, would be disproportionate to the circumstances of his offense and conviction and to the non-custodial sentences imposed anticipated to be imposed on many others in these cases.

### 2. A Custodial Sentence Is Not Necessary to Afford Adequate Deterrence and Protect the Public From Further Crimes of the Defendant

Mr. Napier does not deny his current involvement in the criminal justice system, but asks the Court to consider that there is no longer any need for deterrence against any future criminal conduct given his age, work history, and family connections. U.S.S.C., *Recidivism Among Federal Offenders: A Comprehensive Overview*, at 23 (March 2016), *available at* http://www.ussc.gov/research/research-publications/recidivism-among-federaloffenderscomprehensive-overview.

### 3. A Sentence of Supervised Release Is Punitive and Serves the Purposes of Sentencing

The purposes of sentencing will be achieved if the Court imposes a non-custodial sentence on Mr. Napier. Sentencing a defendant to probation or supervised release is not "an act of leniency." *See Gall*, 552 U.S. at 44. "[P]robation is … a punitive measure, and 'may be used as an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, including promoting respect for the law, providing just punishment for the offense, achieving general deterrence, and protecting the public from further crimes by defendant." *United States v. Brady*, No. 02 CR 1043 (JG), 2004 WL 86414, at *8-9 (E.D.N.Y. Jan. 20, 2004) (quoting *U.S. Guidelines Manual*, ch. 5, pt. B, introductory cmt.). A sentence of supervised release would "substantially restrict [Mr. Napiers'] liberty," *Gall*, 552 U.S. at 48, and will serve a punitive and deterrent effect without the need for incarceration. Indeed, Mr. Napier has already experienced these effects of supervised release in the more than two years since his arrest and subsequent release from custody.

### 4. Mr. Napier Has Demonstrated Significant Remorse and Rehabilitation

Here, Mr. Napier's post-offense rehabilitation, combined with a careful analysis of the circumstances of the offense, weigh strongly in favor of a downward variance from the excessively high Guidelines range. *See United States v. Robertson*, 662 F.3d 871, 880 (7th Cir. 2011)

("Substantial and reliable evidence of genuine rehabilitation presents a non-frivolous argument for imposing a sentence below the Guideline range."). In circumstances similar to those here, courts have found a significant downward variance warranted.

For example, in *United States v. Hairston*, the court approved a downward variance from a 121-151-month recommended Guidelines range, to a mandatory minimum sentence of 60 months, where the defendant, who had pleaded guilty to one count of distributing more than five grams of cocaine base with a firearms enhancement, demonstrated significant rehabilitation after being charged with the offense, but before sentencing. *See* 502 F.3d 378 (6th Cir. 2007). Specifically, during the presentencing period, Hairston "remained drug-free, . . . did not commit any legal violations, except for a minor traffic violation, and held a steady job as a maintenance technician," as well as "support[ing] three children of his own, two stepchildren, and his significant other." *Id.* at 381. Much of the behavior Hairston relied on to show his rehabilitation, the court noted, was actually required as a condition of his pretrial release—including his clean urinalyses, lack of criminal offenses, and maintaining verifiable employment. *See id.* at 384. But his behavior nonetheless showed significant rehabilitation, in large part because it differed substantially from the "countless instances" in which criminal defendants violate their conditions of release. *Id.* In addition, his lack of drug use was significant because he "abused drugs and alcohol for more than half of his life . . . and was unable to maintain consistent work since dropping out of school after completing the eighth grade." Also, the drug transactions in which he was involved "did not exceed $1,600 [in value] . . . . And he distributed a total of [only] 38.6 grams of crack. His activities in this case were motivated by his addiction as opposed to his profit motive." *Id.* at 382. Overall, considering the relatively minor nature of the crimes at issue, weighed against Hairston's about-face in terms of productivity and responsibility, and the fact that he had successfully "extricated himself from the drug culture" in which he had been immersed for many years, the circuit court affirmed the district court's conclusion that the very substantial downward variance was warranted. *Id.* at 386.

Similarly, in *United States v. Shy*, the Eighth Circuit affirmed the district court's conclusion that the one of the defendants, Tina Lynn Burton, should be sentenced only to probation, rather than to a Guidelines range of incarceration for 37 to 46 months. *See* 538 F.3d 933, 937-38 (8th Cir. 2008).

The district court was "impressed . . . by how [Burton] changed her life around, got help for her drug problem, and helped others through 'very valuable and meaningful work that would benefit not only Burton financially but other people.'" *Id.* at 936 (alteration omitted). For these reasons, the district court concluded, Burton would not relapse into a criminal lifestyle. *Id.*

Mr. Napier works hard in a job requiring intense manual labor for 12 or more hours, six days per week.  He has demonstrated substantial self-motivated rehabilitation since his arrest in this case in obtaining and holding down this job, and in unstintingly caring for his family and now three year old daughter. He has remained free from drugs and alcohol, and has focused on management of his life responsibilities. He has ceased any and all criminal activities, and has focused on developing stronger bonds with his siblings, his children, his family, and his community. Mr. Napier has complied with all the conditions of his pretrial release, and has found a new meaning in life through work and family.  Mr. Napier's attached sentencing letters testify to Mr. Napier's remorse and regret for his crime. *See Sentencing Letters, attached as Exhibit A.* All of these considerations weigh in favor of a non-custodial sentence for Mr. Napier.

    C.    <u>Mr. Napier's Need for  Medical Care Weighs Against a Custodial Sentence under Section 3553(a)(2)(D)</u>

Section 3553(a)(2)(D) envisions that the Court may take into account a defendant's need for medical care in determining an appropriate sentence.  The medical conditions in paragraphs 47 and 48 of the probation report militate in favor of a variance in connection with this aspect of Section 3553(a)..

    D.    <u>The Need to Avoid Unwarranted Sentence Disparities Weighs Heavily Towards a Non-Custodial Sentence (Section 3553(a)(6))</u>

Finally, a non-custodial sentence for Mr. Napier is merited in order to avoid unwarranted sentencing disparities as compared to the other co-defendants in this case.  For the reasons to be described in counsel's declaration which we will seek to file under seal, and for the reasons set forth herein, Mr. Napier requests a sentence of time already served an three years of supervised release to account for unwarranted sentencing disparity in these airport cases.  Mr. Napier also requests that the Court order the government to provide the plea agreements in the other airport matters which have pled, so that Mr. Napier can effectively, through counsel, argue this prong of 18 U.S.C. Section

3553(a) at a continued sentencing hearing

## III.

### MR. NAPIER REQUESTS THAT THE COURT CONSIDER THE SENTENCING LETTERS ATTACHED AS EXHIBIT A

Mr. Napier respectfully requests that the Court consider the sentencing letters attached as Exhibit A.

## IV.

### REQUESTED COURT RECOMMENDATIONS TO BOP

A. <u>Mr. Napier Objects to the Probation Reports Recommendation That He Is Not Eligible For R.D.A.P.</u>

On Page 3 of the probation officer's recommendation appended to the probation report, United States Probation contests Mr. Napier's request to be recommended for the RDAP program. Both Mr. Napier's uncle and ex-fiancé believe the probation officer misunderstood what they told him. They verified what Mr. Napier said, which is that he has smoked marijuana on almost a daily basis until his arrest in this case, is not currently smoking marijuana, but due to the stresses in his life, is asking for help in leading a drug free life once he is released from the Bureau of Prisons, if he is sentenced to a term of incarceration.

B. <u>Mr. Napier Requests That the Court Recommend That He Be Sentenced to Federal Prison Camp as Close as Possible to His Family in Houston, Texas</u>

Mr. Napier, if he is sentenced to custody, would like to be housed as close to his family in Houston Texas, particularly his three year old daughter. He is also eligible for a prison camp due to his prior record, and the nature of this offense.

## V.

## CONCLUSION

For the above stated reasons, Mr. Napier requests that the Court sentence him to time already served, a three year period of supervised release, and a penalty assessment of $100.

Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

Dated: June 14, 2017                By: /s/David J. Cohen
                                        DAVID J. COHEN, ESQ.
                                    Attorneys for Defendant **Bobby Napier**