DAVID J. COHEN, ESQ.
California Bar No. 145748
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Bobby Napier**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BOBBY NAPIER,<br><br>Defendant. | Case No. 14-CR-337 CRB<br><br>**MR. NAPIER'S REPLY TO UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: June 20, 2017<br>Time: 1:30 p.m.<br>Ctrm: 6 |

**I.**

**INTRODUCTION**

The government's sentencing memorandum largely adheres to U.S. Probation's presentence report in its recitation of the facts and calculation of the appropriate starting Guidelines range, agreeing that the initial sentencing range, before consideration of the individual attributes of Mr. Napier and his offense, is 70-87 months. However, the government disagrees with Probation and with Mr. Napier regarding the appropriate sentence to impose, arguing that the mitigating factors cited in the presentence report do not warrant a downward variance.[1]

The government notes that Probation bases its recommended below-Guidelines sentence on the basis of two factors: (1) Mr. Napier's conduct over the past years while on pretrial release and (2) the inflation of Mr. Napier's starting Guidelines range that results from the unfavorable calculation specifically applicable to conspiracy to distribute cocaine. In fact, Probation identified

---

[1] The government acknowledges that the factors identified by Probation are appropriate for consideration pursuant to 18 U.S.C. § 3553(a), and merely contends that such consideration does not support a variance below the 70 month sentence it requests.

a third basis for its recommended downward variance, and though the government does not explicitly refer to it, it does offer a meager refutation: (3) Mr. Napier's role as a "middleman" in the scheme, not directly involved with the narcotics at either their point of origin nor sale, nor the process of the substances' transportation between those points.[2] The government cites to no authority for its position that these factors do not justify a downward variance, and herein, Mr. Napier provides to this Court argument on these specific points.[3]

## II.

### JUST AS U.S. PROBATION ARGUES, MR. NAPIER'S EXEMPLARY CONDUCT WHILE ON PRETRIAL RELEASE SUPPORTS A DOWNWARD VARIANCE FROM THE GUIDELINES OFFENSE LEVEL OF 27.

The government does not contest that Mr. Napier has been a fully functioning, law-abiding citizen during the entirety of the term of his pretrial release, obtaining gainful employment and providing for multiple family members, including his three children. Nor does the government argue this conduct has been anything but commendable. It is well-established that post-offense rehabilitation, such as the type Mr. Napier has engaged in, is an appropriate mitigating circumstance for sentencing courts to consider and on which it is appropriate to impose a downward variance in sentencing. *See*, *e.g.*, *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008) (outside-Guidelines sentence was justified by defendant's post-offense changes in behavior); *United States v. Bradstreet*, 207 F.3d 76 (1st Cir. 2000) (20-month downward variance was justified by defendant's conduct in prison); *United States v. Maier*, 975 F.2d 944, 945 (2d Cir. 1992) ("uneven course" of rehabilitation still warranted a downward variance due to defendant's long-term addiction). Here, that is precisely what Mr. Napier's conduct supports.

Rather than deny the positive contributions Mr. Napier has made during his pretrial release, the government attempts to minimize those rehabilitative efforts by pointing to its interest in general

---

[2] The presentence report also describes in detail Mr. Napier's personal characteristics, including his upbringing and past hardships, as well as his efforts to be a good man for those around him. It notes that the "history and characteristics of the defendant" are another of the factors supporting its recommended below-Guidelines sentence.

[3] As to additional specific arguments, including those regarding sentencing disparity, Mr. Napier intends to submit a sealed filing to the Court detailing additional facts supportive of his position.

---

deterrence, a goal it argues supports a higher sentence than would otherwise be appropriate. In so arguing, the government falls victim to a tempting myth. Empirical research has shown that a lack of correlation between length of sentence and deterrent effect. "Three National Academy of Science Panels . . . reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 CRIME AND JUSTICE: A REVIEW OF RESEARCH 28-29 (2006) (hereinafter Tonry). In one particular study of deterrence focusing on federal white collar defendants, no difference in deterrent effect was found even between probation and imprisonment as sentences. *See* David Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995). This is no surprise, as potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentencing consequences in the matter one might expect of rational decision makers. Tonry, *supra*, at 28-29. "[T]here is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et. al., *The Missing Link in General Deterrence Theory*, 43 CRIMINOLOGY 623 (2005). Even the Commission itself has found that "[t]here is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high Guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." *See* U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES, at 15 (2004). Consequently, courts have struggled with the notion that a defendant who poses little risk of recidivism might be punished to prevent others from committing a crime. *See*, *e.g.*, *United States v. Cole*, 622 F. Supp. 2d 632 (N.D. Ohio 2008) ("Is it ethical to impose a greater-than necessary punishment upon an individual criminal defendant to protect society at large?").

Mr. Napier has evidenced his desire and ability to reform, change his behaviors, support his family, and contribute to society. Those individual characteristics, marks of integrity and perseverance, should be duly considered by this Court and should inform the sentence that is

1   imposed. Mr. Napier should not be punished pursuant to an oft-debunked theory that he can be made

2   an example of. The convictions of a number of individuals involved in TSA misconduct itself serves

3   as the best warning sign for any future criminal endeavors. For those individuals who believe they

4   will be able to get away with a similar scheme, the sentence imposed on Mr. Napier will not serve

5   as a deterrent no matter how many months of imprisonment it carries.

6                                      **III.**

7   **U.S. PROBATION IS CORRECT TO ARGUE THAT MR. NAPIER'S GUIDELINES**
    **RANGE IS INFLATED BY THE OFFENSE CALCULATIONS ASSOCIATED WITH**
8                 **CONSPIRACY TO DISTRIBUTE COCAINE.**

9            Acknowledging the high Guidelines range that results from a cross-reference to the range

10  applicable for conspiracy to distribute cocaine, U.S. Probation has recommended the sentencing

11  Court vary downward in recognition of the inflated starting point for calculation. The government,

12  naturally, disagrees. But Probation has identified a fundamental issue with the sentence the

13  government wishes to impose on Mr. Napier - it may fall within the Guidelines when calculated

14  without any consideration of context, but it fails entirely to give due heed to the specific conduct Mr.

15  Napier committed in this case. Mr. Napier's offense involved an undercover officer and amounts of

16  simulated narcotics which Mr. Napier had little control over. Notably, district courts have granted

17  downward adjustments where the low purity of the drugs involved in alleged transactions was

18  deemed relevant. *See*, *e.g.*, *United States v. Berroa-Medrano*, 303 F.3d 277 (3d Cir. 2002); *United*

19  *States v. Stewart*, 761 F.3d 993, 1001 (9th Cir. 2014); *United States v. Restrepo*, 802 F. Supp. 781,

20  791 (E.D.N.Y. 1992), *rev'd on other grounds*, 999 F.2d 640 (2d Cir. 1993). Likewise, a defendant's

21  lack of knowledge regarding the type, quantity, or purity of the drugs can also justify a downward

22  adjustment. *See*, *e.g.*, *United States v. Chalarca*, 95 F.3d 239 (2d Cir. 1996); *United States v.*

23  *Mendoza*, 121 F.3d 510 (9th Cir. 1997) (defendant had no knowledge of the quantity or purity of the

24  drugs); *United States v. Jaber*, 362 F. Supp. 2d 365 (D. Mass. 2005) (defendant was mere

25  functionary who took orders from others, and the amounts distributed were not his decision). Here,

26  of course, the drugs were simulated, and thus of necessarily low purity. And Mr. Napier's

27  involvement as the facilitator of bribes left him with little control over (or interest in) the specific

28  narcotics being smuggled or the amounts in which they were transported.

1    Indeed, the circumstances of this case should give this Court pause in imposing anything

2 other than a low sentence on Mr. Napier. Because his offense involved an undercover officer, at no

3 point did Mr. Napier deal with real drugs, and it was in fact the government's actions that determined

4 the quantities that would be involved. As the Chief Justice's hesitation in a *per curiam* Fifth Circuit

5 decision notes, she "strongly believes that the government miscarried justice by insisting that this

6 defendant be sentenced in this case on the basis of contrived amounts of non-existent cocaine."

7 *United States v. Williams*, 332 F. App'x 937, 937 n.1 (5th Cir. 2009). The Chief Justice's

8 reservations are sensible. In fact, claims of imperfect entrapment may be raised outside the context

9 of departures by way of variance analysis pursuant to § 3553(a). *United States v. Díaz-Maldonado*,

10 727 F.3d 130, 141 (1st Cir. 2013) (a "claim of imperfect entrapment can be thought of as fairly

11 encompassed in the analysis of the 'nature and circumstances of the offense' under § 3553(a)," and

12 a downward variance can be sought accordingly); *see also United States v. McKeever*, 824 F.3d

13 1113, 1123 (D.C. Cir. 2016). Even where a defendant initiated the criminal activity or was

14 predisposed to commit the crime, imperfect or sentencing entrapment analysis may apply to justify

15 a reduced sentence in recognition of the fact that the defendant was "both less morally blameworthy

16 than an enthusiastic [defendant] and less likely to commit other crimes if not incarcerated." *U.S. v.*

17 *McClelland*, 72 F.3d 717 (9th Cir. 1995); *see also U.S. v. Staufer*, 38 F.3d 1103 (9th Cir. 1994)

18 (finding of sentencing entrapment where defendant was not predisposed to deal in the quantities the

19 government enticed him to sell).

20    The government seeks a sentence for Mr. Napier that is directly responsive to a fictional

21 crime of distribution of cocaine, without regard to the circumstances or context of the offense. The

22 reality is that Mr. Napier is not a drug distributor and was not seeking to transport large amounts of

23 narcotics. Though cross-reference is required by the Guidelines, careful consideration of the specific

24 facts is required by statute. That consideration supports a significant downward variance here.

25                                                    **IV.**

26 **AS U.S. PROBATION RECOMMENDED, MR. NAPIER'S "MIDDLEMAN" ROLE IN**
   **THE SCHEME JUSTIFIES A DOWNWARD VARIANCE.**

27    Perhaps   most   important   to   a   determination   of   the   extent   of   the   downward   variance

28

---

1    appropriate in this case is the fact that Mr. Napier was merely, as U.S. Probation aptly terms it, a

2    "middleman" in the offense. Regardless of the cross-reference required by the bribery Guidelines,

3    a Court should pay careful attention to the specific role a defendant actually played in the offense

4    for which he is being sentenced. For that reason, the Supreme Court has determined that a

5    "middleman in a conspiracy distributing 10,000 pills of ecstasy" is worthy of a significant downward

6    adjustment to his sentence to a probationary term. *Gall v. United States*, 552 U.S. 38, 58 (2007). In

7    that case, the Court noted the defendant's conduct after the offense, including, just as here, the

8    defendant's ability to withdraw from substantial drug use that predated his indictment. *Id*. at 43. Also

9    of importance to the Court, however, was the defendant's limited role in the distribution conspiracy,

10   acting as a necessary component but not as "an organizer, leader, or manager." *Ibid*. The defendant's

11   middleman role in *Gall* is analogous to the role played by Mr. Napier here, who did not initiate any

12   distribution conspiracy nor manage the means of distribution, but merely facilitated smuggling by

13   passing along bribes to a connection he was (un)fortunate enough to have in the TSA.

14        A sentence must be commensurate with the role played by the defendant, regardless of the

15   Guidelines range that is applicable to his conduct in a vacuum. Even a high-level member of a drug

16   distribution conspiracy, for example, should not be given an artificially inflated sentence by

17   attributing to him quantities of drugs that were not attributed to other similar levels of actors, as such

18   aggrandized sentencing fails to acknowledge the specific role that the defendant had in the overall

19   scheme. *See United States v. Reyes-Santiago*, 804 F.3d 453, 472 (1st Cir. 2015). As Probation wisely

20   noted, Mr. Napier "served largely as a middleman," and although he "helped smuggle drugs through

21   the airport, his primary offense and offense of conviction is bribing a public official." The

22   government ignores this context in its pursuit of general deterrence and because it argues Mr. Napier

23   sat "at the intersection of the public corruption and drug trafficking." To sentence Mr. Napier as if

24   he was a drug trafficker is to ignore the reality of his role in the offense. This Court should vary

25   downward accordingly.

26                                              **V.**

27                                         **CONCLUSION**

28        For the above stated reasons, as well as those put forth in his sentencing memorandum and

1    any sealed filing to follow, Mr. Napier requests that the Court sentence him to time already served,

2    a three year period of supervised release, and a penalty assessment of $100.

3                                        Respectfully submitted,

4                                        **BAY AREA CRIMINAL LAWYERS, PC**

5

6    Dated: June 16, 2017              By: /s/David J. Cohen
                                          DAVID J. COHEN, ESQ.

7                                        Attorneys for Defendant **Bobby Napier**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28